UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ANTHONY M. MIGLIORE,<br><br>          Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the Social<br>Security Administration,<br><br>          Defendant. | Case No. EDCV 12-00251-AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff, then aged 49, filed his application for benefits on August 17, 2009, alleging that he had been disabled since August 15, 2005. [JS 2; Administrative Record ("AR") 158-159]. In a written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge (the "ALJ") found that plaintiff had severe impairments consisting of bilateral shoulder impingement, lumbar spine degenerative disc disease, lumbar strain, mild obstructive sleep apnea, mild obesity, and depression, but that he retained the residual functional capacity ("RFC") to perform a reduced range of light work. [AR

24, 27]. Based on the testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff's RFC precluded him from performing any past relevant work, but that there were jobs that exist in significant numbers in the national and regional economy that plaintiff could perform, such as parking lot booth attendant, electronics worker, or mail clerk - nonpostal. Therefore, the ALJ found plaintiff not disabled at any time through the date of her decision. [AR 35-36].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**Step five**

Plaintiff contends that the ALJ's finding of nondisability at step five was in error. [JS 3-4, 5]. The ALJ concluded that plaintiff retained the RFC to perform a reduced range of light work based upon the fact that plaintiff was only capable of standing and/or walking for four hours out of an eight-hour workday and for no more than one hour at a time. [AR 27, 35-36]. Plaintiff contends that the ALJ's assessment that he can only walk and/or stand for four hours out of an eight-hour day precludes him from performing any light work because a Social Security Ruling ("SSR") provides that "the full range of light work requires standing or walking off and on, for a total of approximately 6 hours of an 8 hour day." [JS 3-4 (citing SSR 83-10, 1983 WL 31251, at *6)]. Plaintiff also notes that light work "requires a good deal of walking or standing."

1 [JS 4 (citing 20 C.F.R. § 404.1567)].

2 Contrary to plaintiff's contention, the ALJ's determination at step five of the sequential evaluation was not inconsistent with the requirements of light work. Plaintiff's inability to stand and walk for more than four hours a day an hour at a time limits the number of light jobs he can perform, but it does not categorically exclude him from performing all light work. See 20 C.F.R. § 404.1567(b), 416.967(b) ("Even though the weight lifted may be very little, a job is in this category [light work] when it requires a good deal of walking or standing, *or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.*") (italics added).

Furthermore, the VE identified specific "light" jobs that a hypothetical person with the exertional capacity described by the ALJ could perform. The VE testified that the hypothetical person could perform the light, unskilled jobs of parking lot booth attendant (Dictionary of Occupational Titles ("DOT") job number 915.473-010), electronics worker (DOT job number 726.687-010), and mail clerk (DOT job number 209.687-026). [AR 84-86]. The VE's testimony provides substantial evidence supporting the ALJ's step-five determination because the vocational expert "identif[ied] a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." Osenbrock v. Apfel, 240 F.3d 1157, 1162–1163 (9th Cir. 2001). Accordingly, the ALJ did not err in finding plaintiff capable of performing other work in the national economy at step five of the sequential evaluation.

**Credibility finding**

Plaintiff contends that the ALJ improperly assessed his subjective symptom testimony. [JS 6-7, 10-12].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of the claimant's subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir.1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony she considers not credible, she must provide specific, convincing reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d

at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the claimant's subjective testimony without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented," including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity, and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional restrictions due to such symptoms. See 20 C.F.R. §§ 404.1529(c) (3), 416.929(c)(3); see also SSR 96–7p, 1996 WL 374186, at *3 (clarifying the Commissioner's policy regarding the evaluation of pain and other symptoms). The ALJ also may employ "ordinary techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or friends concerning the nature, severity, and effect of the claimant's symptoms. See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. Robbins, 466 F.3d at 883. However, "the mere existence of 'affirmative evidence suggesting malingering' vitiates the clear and convincing standard of review." Schow v. Astrue, 272 Fed.Appx. 647, 651 (9th Cir. 2008) (quoting Robbins, 466 F.3d at 883). There was affirmative evidence in the record suggesting that plaintiff was malingering and exaggerating his physical symptoms. The ALJ noted that the Commissioner's consultative

examining physician, Dr. Wilker, found that during the orthopedic examination, plaintiff "exhibited poor effort and positive Waddell's signs, indicating symptom magnification." [AR 28 (citing AR 259-264)[1]]. Dr. Wilker's diagnoses were bilateral shoulder impingement, lumbar strain, and "symptom magnifier." [AR 264].

Plaintiff argues that the Waddell's signs noted by Dr. Wilker were neither reliable nor clinically significant, and that Dr. Combs reported negative Waddell's signs. [JS 10-12]. Notwithstanding plaintiff's contentions, Dr. Wilker's findings of positive Waddell's signs and symptom magnification was "affirmative evidence suggesting malingering" that the ALJ was entitled to consider in the context of the record as a whole. See Schow, 272 Fed.Appx. at 651; Longmore v. Astrue 783 F.Supp.2d 1130, 1134 (D. Or. 2011) (stating that a finding suggesting malingering "is proper for consideration," provided the ALJ considers the the entire case record in determining a claimant's credibility); Richardson v. Astrue, 2011 WL 3273255, at * 7 (W.D. Wash. July 28, 2011) (noting that "no actual diagnosis of malingering is required for the ALJ or the Court to find affirmative evidence thereof," that "the important point is that there must be *affirmative evidence* of malingering") (emphasis in original) (citing Carmickle, 533 F.3d at 1160 n.1 (noting that the statement in Robbins "suggesting that the ALJ must make a specific *finding* of malingering before the clear-and-convincing-reasons standard applies is an anomaly in this Circuit's caselaw") (emphasis in original); Valentine v. Comm'r Social Sec. Admin., 574 F.3d 685, 693 (9th Cir.2009) (requiring "affirmative evidence showing that the claimant is malingering") (citing Morgan, 169 F.3d at 599)).

---

[1] Under the section of his examination report devoted to "thoracic and lumbar spine," Dr. Wilker noted that plaintiff "complains of pain with rotation of the trunk when the rotation was actually done through the pelvis." [AR 261]. Dr. Wilker also reported that plaintiff

> is unable to abduct or flex his upper extremities past 90 degrees. He appears to be resisting with good strength such motions. When asked to lift up his arms actively by himself, he does not bring them up to full range of motion, and does not appear to have any trapezius muscle helping with the elevating of his shoulder, which is more consistent with poor effort.

[AR 262]. Under "Impression," Dr. Wilker wrote that plaintiff "had positive Waddell's signs for simulation, and appears to give poor effort with the physical exam." [AR 264]. "Waddell's signs" refers to clinical findings that indicate the presence of non-anatomic pain. See Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 3d § 11:2 (2002).

Even if Dr. Wilker's findings with respect to symptom magnification were disregarded, however, the ALJ's remaining reasons for finding plaintiff not fully credible were clear and convincing. The ALJ noted that even after his alleged onset date, plaintiff continued to seek employment. During the hearing, plaintiff testified that he applied for naval aviation jobs and even attended interviews, but was not hired. [AR 28-29]. Plaintiff also testified that he did some paid work for the Census Bureau and as a construction consultant after his alleged onset date. [AR 28, 48-51]. The ALJ permissibly considered plaintiff's work record and attempts to find work in evaluating his credibility. See Bray v. Astrue, 554 F.3d 1219, 1227 (9th Cir. 2009) (holding that the claimant's allegation of debilitating illness was belied in part by evidence that the claimant had sought employment after the alleged onset date); Thomas, 278 F.3d at 958-959 (holding that inconsistency between the claimant's testimony and conduct supported the ALJ's credibility finding).

The ALJ also properly noted that, despite allegations of debilitating pain, plaintiff "received routine conservative treatment for complaints of pain in his shoulders and back." [AR 28]. An ALJ may rely on "unexplained or inadequately explained failure to seek treatment or to follow a course of treatment" in assessing credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that the ALJ permissibly inferred that the claimant's pain was not as disabling as he alleged given his failure to "seek an aggressive treatment program" or "an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects"); Fair, 885 F.2d at 604 (finding that allegations of persistent, severe pain and discomfort were inconsistent with the claimant's "minimal conservative treatment" and failure to follow doctor's advice).

Accordingly, it was reasonable for the ALJ to rely on the reasons stated above in finding that plaintiff's subjective testimony regarding the severity of his symptoms was not wholly credible. It is the responsibility of the ALJ to determine credibility and resolve conflicts or ambiguities in the evidence, Magallanes v. Brown, 881 F.2d 747, 750 (9th Cir. 1989), and a reviewing court may not second-guess the ALJ's credibility determination where, as here, it is supported by substantial evidence in the record. See Fair, 885 F.2d at 604.

**Treating source opinions**

Plaintiff contends that the ALJ erred in rejecting the opinions of plaintiff's treating physicians, Drs. Morrison, Combs, Weiner, and Jedamski. [JS 12-13, 17-18].

A treating physician's opinion is not binding on the Commissioner with respect to the existence of an impairment or the ultimate issue of disability. Tonapetyan, 242 F.3d at 1148. However, a treating physician's medical opinion as to the nature and severity of an individual's impairment is entitled to controlling weight when that opinion is well-supported and not inconsistent with other substantial evidence in the record. Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p, 1996 WL 374188, at *1-*2. Even when not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed" in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other evidence in the record; and (6) the area of specialization. Edlund, 253 F.3d at 1157 & n.6 (quoting SSR 96-2p and citing 20 C.F.R. § 404.1527); Holohan, 246 F.3d at 1202.

If a treating source opinion is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The ALJ extensively reviewed plaintiff's medical records [AR 24-34], and provided legitimate reasons for refusing to give plaintiff's treating physicians' opinions controlling weight.

**Dr. Morrison**

David Morrison, M.D., a specialist in elbow and shoulder surgery who examined plaintiff in April 2008, and again in March 2009, determined that plaintiff had lumbar and shoulder disorders resulting in a "marked disability with serious limitations in activity," and that plaintiff would require up to five days per month off of work. [AR 223-227, 228-231]. The ALJ permissibly rejected Dr. Morrison's opinion. First, the ALJ noted that Dr. Morrison heavily relied upon plaintiff's subjective reports of symptoms and limitations. [AR 33]. As discussed above, the ALJ reasonably found plaintiff not fully credible regarding his subjective symptoms. This was a specific, legitimate reason for rejecting Dr. Morrison's opinion. See Fair, 885 F.2d at 605 (holding that the ALJ permissibly disregarded a treating physician's opinion where it was premised on the claimant's own subjective complaints, which the ALJ had already properly discounted).

7

The ALJ also noted that plaintiff had only seen Dr. Morrison twice, and that the visits were almost one year apart. [AR 33]. The Social Security Administration's ("SSA's") regulations provide that the greater the length of the treatment relationship and the greater the frequency of examination, the more weight will be given to the treating source's opinion. See 20 C.F.R. § 404.1527(c)(2)(i), 416,927(c)(2)(i). The ALJ also found that Dr. Morrison's relatively conservative treatment recommendations for exercises, physical therapy, and pain medication were at odds with his findings of debilitating symptoms and limitations. [AR 33]. See Rollins, 261 F.3d at 856 (holding that the ALJ properly rejected a treating physician's opinion based in part on the physician's "conservative course of treatment"). Finally, the ALJ permissibly rejected Dr. Morrison's opinion because his opinion was inconsistent with the other medical evidence in the record, which indicated "only mild abnormalities in the lumbar and bilateral shoulders." [AR 33-34].   See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4)("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

### Dr. Combs

Plaintiff contends that the ALJ "afforded less weight" to the opinion of Curtiss Combs, M.D. [JS 12 (citing AR 30)]. Plaintiff saw Dr. Combs on June 12, 2008, apparently to review lab results. [AR 30, 361-362]. The ALJ noted that plaintiff informed Dr. Combs that he was seen at pain management two weeks prior for injections and that he was happy with the results of the first injection. [AR 30, 361]. The ALJ also noted that Dr. Combs's examination of plaintiff was unremarkable. [AR 30, 362]. Dr. Combs did not assess any restrictions or provide any opinion concerning plaintiff's limitations or disability status, so he did not render a "medical opinion" as that term is defined by the Commissioner. See 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (defining medical opinions as statements from "acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis, and prognosis, what you can still do despite impairment(s), and your physical and mental restrictions."). In any event, Dr. Combs's treatment notes do not support a finding that plaintiff was more functionally limited than the ALJ found, so any error by the ALJ in evaluating those notes was harmless. See McLeod v. Astrue, 640 F.3d 881, 886–888 (9th Cir. 2011) (holding that the same kind of harmless error rule that courts ordinarily apply in civil cases applies in social security disability cases, and that the burden is on the party attacking the agency's determination to show that prejudice resulted from the error) (citing Shinseki v. Sanders, 556

U.S. 396, 406–409 (2009)).

**Drs. Weiner and Jedamski**

Plaintiff contends that the ALJ erroneously "failed to comment" on plaintiff's treating relationship with his pain management physician, Richard Weiner, M.D. [JS 12 (citing AR 30)]. As the Commissioner notes, however, the ALJ's decision addresses Dr. Weiner's May 9, 2008 consultation, but mistakenly attributes that opinion to Dr. Jedamski. [JS 16 (citing AR 30)].[2] The ALJ noted that plaintiff's examination on that date revealed good range of motion in the back. Plaintiff exhibited tenderness and pain in the shoulders bilaterally. X-rays of the lumbar spine revealed mild scoliosis and spondylosis with loss of disc height at L1-2 and L5-S1. X-rays of the shoulders revealed mild degenerative disease with evidence of impingement and possible rotator cuff tear on the left, and mild arthritis bilaterally. [AR 30, 233]. Dr. Weiner recommended that plaintiff undergo an MRI of the lumbar spine and a lumbar epidural steroid injection, if indicated by the MRI; continue his present medications; undergo physical therapy; and consider a shoulder injection "for temporary relief in the future should he need it." [AR 233-234]. Dr. Weiner recommended "[f]urther evaluation per Dr. Morrison." [AR 234]. Neither Dr. Weiner nor Dr. Jedamski assessed any limitations or proffered an opinion regarding plaintiff's ability to work. Accordingly, any error on the ALJ's part in evaluating that evidence was harmless. See McLeod, 640 F.3d at 888; Shinseki, 556 U.S. at 406.

**Veterans' Administration determination**

Plaintiff contends that the ALJ erred by failing to give adequate weight to the determination of the Veterans' Administration ("VA"). [JS 18-19, 21].

The VA assessed plaintiff with an overall combined disability rating of 90 percent. [AR 214-215.] The VA assessed plaintiff with a 40 percent disability for lumbar spine degenerative joint disease with sciatica, as plaintiff exhibited a slight decrease in range of motion, but it found no evidence of more limited range of motion or an unfavorable ankylosis of the entire thoracolumbar spine. The VA also assessed a 20 percent disability for right shoulder impingement syndrome, as examination revealed right shoulder impingement with arm motion limited at shoulder level, and a 20 percent disability rating for the left shoulder

---

[2] Dr. Weiner's May 9, 2008 examination and Dr. Jedamski's August 27, 2009 examination are both included as part of Exhibit 4F. [AR 232-236].

impingement, which also revealed arm motion limited at shoulder level. [AR 33, 210].[3] The VA concluded that plaintiff was not entitled to individual unemployability, which is granted when a veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, because the evidence reviewed by the VA did not show total disability due to service-connected disabilities. [AR 214].

An ALJ must ordinarily give great weight to a VA determination of disability. McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002). "Because the VA and SSA criteria for determining disability are not identical, however, the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." McCartey, 298 F.3d at 1076 (citing Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001)). Similarly, the SSA's regulations state that a decision by "any other governmental agency about whether you are disabled" is "based on its rules and is not our decision about whether you are disabled ," and that the SSA must make a disability determination "based on social security law. Therefore, a determination made by any other agency that you are disabled . . . is not binding on us." 20 C.F.R. §§ 404.1504, 416.904.

The ALJ stated that she gave "great weight to the objective clinical and diagnostic evidence used by the VA" to reach its determination of plaintiff's 90 percent disability rating. [AR 33]. However, she did not give "much weight" to the 90 percent combined rating itself because "the VA criteria is not the same criteria used to determine disability under the Social Security Act," and because the objective evidence used by the VA to arrive at its 90 percent disability rating was consistent with the ALJ's step five assessment that there were jobs that plaintiff could perform in the national and regional economy. [AR 33].

The ALJ gave "persuasive, specific, valid reasons," McCartey, 298 F.3d at 1076, for affording the VA's disability rating less weight, namely, that the medical evidence relied upon by both the ALJ and the VA was not inconsistent with the ALJ's step-five finding there were jobs in the economy which plaintiff could perform despite his impairments. See Nunes v. Astrue, 2010 WL 3715141, at *5 (E.D.Cal. Sep. 16, 2010) (noting that the ALJ's finding that the claimant could perform work in the economy, based upon the testimony of the VE, was a persuasive and valid reason for not giving the VA disability rating controlling weight because the VA did not have the benefit of the VE's expertise). As discussed above, the ALJ

---

[3] In addition, the VA determined that plaintiff had various other disabilities [AR 206] based upon conditions that the ALJ did not find severe, a finding which plaintiff does not challenge here.

extensively reviewed the medical evidence in the record, reasonably gave little weight to Dr. Morrison's opinion that plaintiff could not work, and did not err in evaluating the other medical opinion evidence, which constituted substantial evidence supporting her conclusion that plaintiff was not disabled within the meaning of the Social Security Act. [AR 33-34].

## Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of reversible legal error. Therefore, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

July 29, 2013

_____
ANDREW J. WISTRICH
United States Magistrate Judge